**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| MARYIA GAPANOVITCH, | No. 09-71630 |
| Petitioner, | |
| v. | Agency No. A099-869-762 |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 8, 2013**
San Francisco, California

Before: N.R. SMITH and NGUYEN, Circuit Judges, and QUIST, Senior District Judge.***

Petitioner Maryia Gapanovitch, a native and citizen of Belarus, petitions for

review of a decision by the Board of Immigration Appeals (BIA) affirming an

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Gordon J. Quist, Senior District Judge for the U.S. District Court for the Western District of Michigan, sitting by designation.

immigration judge's denial of her application for asylum.[1]  We have jurisdiction under 8 U.S.C. § 1252(a)(1), and we deny the petition.

"[A]n alien who seeks to demonstrate that she was persecuted in the past must prove (1) that she was the victim of an incident, or incidents, that rise to the level of persecution; (2) that the persecution was on account of one of the protected grounds; and (3) that such persecution was committed by the government or forces the government is either unable or unwilling to control."  *Parussimova v. Mukasey*, 555 F.3d 734, 738–39 (9th Cir. 2009) (internal quotation marks omitted).

Substantial evidence supports the BIA's finding that the harm Gapanovitch suffered did not rise to the level of persecution.  *See Hamazaspyan v. Holder*, 590 F.3d 744, 747 (9th Cir. 2009) ("Factual findings are reviewed for substantial evidence." (internal quotation marks omitted)); *Zheng v. Holder*, 644 F.3d 829, 835 (9th Cir. 2011) ("In order for this court to reverse the BIA with respect to a finding of fact, the evidence must compel a different conclusion from the one reached by the BIA." (citing *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992));

---

[1]  On appeal, Gapanovitch does not challenge the BIA's denial of withholding of removal and protection under the Convention Against Torture. Further, Gapanovitch does not challenge the BIA's determination that she failed to establish a well-founded fear of future persecution.  Thus, we discuss only Gapanovitch's claim that the BIA erred in finding that she failed to establish past persecution.

*see also* 8 U.S.C. § 1252(b)(4)(B) ("[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

Any harm that Slava Dubaev—a man Gapanovitch briefly dated—inflicted on her was not "committed by the government or forces the government is either unable or unwilling to control." *Parussimova*, 555 F.3d at 739. To the contrary, the fact that the police questioned Gapanovitch about Dubaev and were actively looking for him because he was suspected of committing criminal activities shows the government's willingness to control him.

Gapanovitch claims that once, the skinheads yelled "dirty language" at her, called her names, and ran after her because they mistakenly thought she was Chechen due to her dark complexion. This single encounter with the skinheads did not rise to the level of persecution. *See Hoxha v. Ashcroft*, 319 F.3d 1179, 1181–82 (9th Cir. 2003) (holding that the petitioner did not suffer past persecution even if the petitioner was threatened several times by various Serbs and was beaten by a group of Serbs which resulted in two broken ribs). Of equal importance, nothing in the record compels the conclusion that the government is either unable or unwilling to control the skinheads.

Lastly, Gapanovitch claims that the police questioned her twice regarding the whereabouts of Dubaev and, on one occasion, the officers applied force to her arm and neck, resulting in some bruises. On another occasion, KGB agents briefly searched her house, verbally abused her, accused her of hiding Dubaev, seized an "anti-president" flyer, and told her they would press a charge against her for being against President Lukashenko. However, no charges were filed. We cannot say that a reasonable factfinder would be compelled to conclude that these experiences, without more, cumulatively amount to persecution. *See Halim v. Holder*, 590 F.3d 971, 975–76 (9th Cir. 2009) (holding that evidence that petitioner was denied medical services by a government-owned clinic; was arrested by the police, accused of possessing drugs, and detained for three days; and was beaten by a mob of rioters because he appeared to be Chinese did not compel the conclusion that he suffered past persecution); *Wakkary v. Holder*, 558 F.3d 1049, 1059 (9th Cir. 2009) (holding that evidence of isolated incidents involving minor beatings, being robbed, and being accosted by a threatening mob, without more, do not compel a conclusion that these experiences cumulatively amounted to persecution).

**PETITION DENIED.**

4